UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY LOUIS WILLIAMS,

       Petitioner,                       Case No. 16-12820
                                               Hon. Matthew F. Leitman
v.

CATHERINE S. BAUMAN,

       Respondent.
_____/

**<u>OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS [ECF #9], DENYING THE HABEAS PETITION [ECF #1], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>**

This matter has come before the Court on petitioner Henry Louis Williams' *pro se* Habeas Corpus Petition under 28 U.S.C. § 2254 (ECF #1) and Respondent's Motion to Dismiss the Petition (ECF #9). The Petition challenges Williams' Oakland County convictions for armed robbery, Mich. Comp. Laws § 750.529, conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a, Mich. Comp. Laws § 750.529, and conspiracy to commit first-degree home invasion, Mich. Comp. Laws § 750.157a, Mich. Comp. Laws § 750.110a(2). Williams alleges as grounds for relief that (1) the trial court abused its discretion by failing to abide by the sentencing agreement, (2) offense variables 1 through 3 of the Michigan sentencing guidelines were scored incorrectly, (3) the trial court abused its discretion when

1

scoring offense variable 10 of the sentencing guidelines; and (4) his guilty plea was involuntary because it was based on erroneous advice from counsel. Respondent urges the Court to dismiss the Petition on the grounds that Petitioner failed to exhaust state remedies for his claims and that his claims are moot. The Court has concluded from a review of the pleadings and state-court record that Petitioner's claims are moot, not cognizable on habeas review, or meritless. Accordingly, the Court will **GRANT** Respondent's Motion and **DENY** the Habeas Petition.

**I**

The charges against Williams arose from an incident that occurred on April 30, 2014. On that date, Petitioner and his three co-defendants went to a house in Bloomfield Hills to steal jewelry, money, or other valuable things. One of the co-defendants knew the homeowner and anticipated that the homeowner would be away at the time. However, when the group of four arrived at the house, they discovered that the homeowner was inside the house. The group then went to Detroit, picked up a gun, and returned to the house. Williams stood outside the house and acted as a "lookout" while one of the defendants went to the front door of the residence. When the homeowner refused to open the door, the co-defendant fired four or five gunshots through the door and seriously injured the homeowner.

On September 29, 2014, Williams pleaded guilty, as charged, to armed robbery, conspiracy to commit armed robbery, and conspiracy to commit home

invasion. He was twenty-one years old at the time, and he stated that he understood the charges to which he was pleading guilty. He also stated that he understood the rights he was waiving and that it was his choice to plead guilty. (9/29/14 Plea Tr. at 5-9.)

There was no plea agreement, but the trial court agreed -- pursuant to the decision in *People v. Cobbs*, 505 N.W.2d 208 (1993), discussed in footnote 1 below -- to sentence Williams within the bottom one-third of the sentencing guidelines range.[1] Defense counsel calculated the sentencing guidelines at 135 - 225 months,

---

[1] "Michigan's sentencing guidelines . . . create a range within which the trial court must set the minimum sentence." *People v. Drohan*, 475 Mich. 140, 161; 715 N.W.2d 778, 790 (2006). "The maximum sentence is not determined by the trial court, but rather is set by law." *Id.*

In *People v. Cobbs*, 505 N.W.2d 208 (1993), the Michigan Supreme Court approved the following manner in which a judge may participate in sentencing discussions:

> At the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.
>
> . . . .
>
> The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

3

whereas the prosecution calculated the guidelines at 171 - 285 months, but defense counsel stated that the guidelines would be within one of those two ranges. *See id.* at 4-5; 7/22/15 Mot. Hr'g at 3.

When the Michigan Department of Corrections calculated the guidelines range for the trial court in preparation for sentencing, it determined that the guidelines were 225 to 375 months. (12/8/14 Sentencing Tr. at 4, 10.) The trial court then sentenced Williams to concurrent terms of 23 to 50 years in prison for the armed robbery and conspiracy to commit armed robbery and 13 to 20 years for the conspiracy to commit home invasion. The 23-year sentence was 276 months -- one month more than the top of the lowest one third of the sentencing guidelines as calculated by the Michigan Department of Corrections.

In an application for leave to appeal in the Michigan Court of Appeals, Williams argued through counsel that: (1) the trial court failed to abide by the *Cobbs* agreement and failed to advise him of his right to withdraw his plea if the court did not abide by the agreement; (2) the trial court erred when scoring offense variable 10 of the Michigan sentencing guidelines; and (3) the trial court abused its discretion by ordering restitution without any verification of the amount of restitution owed.

---

*Id.*, 443 Mich. at 283, 505 N.W.2d at 212 (emphasis and footnote omitted).

4

The Michigan Court of Appeals denied leave to appeal for lack of merit in Williams' claims. *See People v. Williams*, No. 325561 (Mich. Ct. App. Mar. 3, 2015).

In a *pro se* application for leave to appeal in the Michigan Supreme Court, Williams raised the same three claims that he had presented to the Michigan Court of Appeals. He also raised two new claims, which alleged that the trial court erred in scoring offense variable 9 and that his rights under the Fifth Amendment were violated.

While the appellate application was pending in the Michigan Supreme Court, Williams retained counsel, and that attorney filed a motion to withdraw Williams' guilty plea or for re-sentencing. Counsel argued that: (1) Williams' guilty plea was involuntary and unintelligent because it was based on the erroneous advice of counsel regarding the appropriate sentencing guidelines; (2) the trial court failed to advise Williams of his right to withdraw his guilty plea if the court could not follow the *Cobbs* evaluation; and (3) Williams was entitled to re-sentencing because offense variables 1 through 3 and 10 were scored inaccurately.

Shortly after counsel filed the motion to withdraw Williams' guilty plea, she filed a supplemental application in the Michigan Supreme Court and requested a remand to the trial court. She argued that: (1) Williams' plea was involuntary and unintelligent because it was based on the erroneous advice of counsel regarding the sentencing guidelines; (2) the trial court failed to advise Williams of his right to

5

withdraw his plea if the court could not follow the *Cobbs* agreement; (3) trial counsel was ineffective for failing to object to the scoring of offense variables 1 through 3; and (4) trial counsel was ineffective for failing to object properly to offense variable 10.

On July 22, 2015, the trial court held oral argument on Williams' post-conviction motion. The court granted Williams' request to withdraw his guilty plea, but it declined to alter the scoring of the offense variables. The prosecuting attorney then asked the court to adjourn the case for one week while the attorney sought approval from his supervisor for a sentence within the sentencing guidelines contemplated in the *Cobbs* evaluation. The trial court granted the prosecutor's request. (7/22/15 Mot. Hr'g at 3-16.)

On July 29, 2015, the proceedings resumed, and the trial court stated that it would be willing to sentence Williams to a minimum term of 17 years in prison with a maximum sentence of fifty years. Williams agreed to this sentence and was then re-sentenced to a term of 17 to 50 years in prison for the armed robbery and conspiracy to commit armed robbery and 13 to 20 years in prison for the conspiracy to commit home invasion. Notably, this sentence was within the terms of Williams' original *Cobbs* agreement and within the guidelines ranges discussed at Williams' plea hearing.

Williams withdrew his motion to withdraw his guilty plea and his request for an evidentiary hearing concerning trial counsel's earlier representations concerning the sentence. (7/29/15 Mot. Hr'g/Re-Sentencing at 3-15.)

Counsel for Williams then updated the Michigan Supreme Court on the status of the case, and on September 29, 2015, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Williams,* 498 Mich. 884; 869 N.W.2d 585 (2015) (table decision). Williams did not appeal his new sentence. Instead, he filed his Habeas Corpus Petition on August 1, 2016.

II

Respondent argues in her Motion to Dismiss the Petition that Williams did not exhaust state remedies for any of his claims about his new sentence and, to the extent he was raising claims about his earlier sentence, those claims are moot. *See* Mot. to Dismiss, ECF #9. Williams replies that his claims should be deemed exhausted because it would be futile to attempt to exhaust state remedies now. He urges the Court to adjudicate his claims or to hold his Petition in abeyance while he returns to state court and attempts to exhaust state remedies for a claim about appellate counsel. *See* Response to Mot. to Dismiss, ECF #14.

Habeas petitioners ordinarily must exhaust available state remedies before presenting their claims to a federal court in a habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 839, 845 (1999). The

7

exhaustion rule, however, is not a jurisdictional requirement. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). Courts may deny a habeas petition on the merits despite the petitioner's failure to exhaust available state remedies. 28 U.S.C. § 2254(b)(2).

Williams' claims do not warrant habeas relief. The Court therefore excuses any failure to exhaust state remedies and will go directly to the merits of Williams' claims.

### III

To the extent the Michigan Court of Appeals adjudicated at least some of Williams' claims on the merits, this Court's authority "to issue habeas corpus relief . . . is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may grant a state prisoner's application for the writ of habeas corpus only if the state court's adjudication of the prisoner's claims on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Court also is mindful that

> [t]he Constitution's case or controversy requirement confines the jurisdiction of the courts to "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character. . . ." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (citation omitted). Accordingly, this Court lacks jurisdiction to consider any case or issue that has "lost its character as a present, live controversy" and thereby becomes moot. *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969). . . .
>
> " 'Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' " *Int'l Union v. Dana Corp.,* 697 F.2d 718, 720–21 (6th Cir. 1983) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)).

*Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009).

# IV

## A

Williams contends that the trial court abused its discretion by failing to abide by the *Cobbs* agreement. However, this claim is moot. While the trial court initially sentenced Williams to one month more than the bottom one-third of the sentencing guidelines as calculated by the Department of Corrections, the trial court subsequently re-sentenced Williams at his request. The new minimum sentence of 17 years (or 204 months) fell within the bottom one-third of one of the sentencing guideline ranges that Williams contemplated at his guilty plea.[2] By sentencing Williams within the contemplated guidelines, the trial court complied with the *Cobbs* agreement, and thus Williams no longer has a live claim for violation of that agreement.[1]

---

[2] As previously explained, the prosecution calculated the bottom one-third of the guidelines to be 171 to 209 months.

[1] There is also a real question as to whether the claim of failure to abide by the *Cobbs* agreement is cognizable on habeas review. Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) (explaining that "[a] federal court may not issue the writ on the basis of a perceived error of state law"). Williams has not shown how the alleged violation of the *Cobbs* state-law rule amounted to an error of federal constitutional law.

**B**

Williams' second and third claims challenge the trial court's scoring of the Michigan sentencing guidelines. Williams states that there was no evidence to support the scoring of offense variable 10 for predatory conduct and that offense variables 1 through 3 (aggravated use of a weapon, lethal potential of the weapon possessed or used, and physical injury to a victim) were scored as though he had been charged with assault with intent to commit murder and felony firearm.

These claims lack merit because "[a] state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law," *Jeffers*, 497 U.S. at 780. Therefore, Williams' claims regarding alleged errors in the scoring of the sentencing guidelines are not cognizable in this habeas corpus action. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).

**C**

In his fourth and final claim, Williams argues that his guilty plea was not knowing, intelligent, and voluntary because he relied on his trial attorney's erroneous advice regarding the sentencing guidelines. However, even if original counsel did miscalculate the guidelines, that miscalculation would not entitle Williams to relief because he was given an opportunity to withdraw the plea he

entered based on that advice, and he declined. Instead of withdrawing his erroneously-induced plea, he chose to re-negotiate the matter with the prosecution, and he agreed to a minimum sentence of 204 months or 17 years. (7/29/15 Mot. Hr'g/Re-Sentencing at 4, 9-11.) Under these circumstances, the erroneous advice of trial counsel neither prejudiced Williams nor rendered his plea unknowing or involuntary.

**V**

Williams' claims are moot, not cognizable on habeas review, or meritless. Furthermore, to the extent that the state courts considered Williams' claims, their decisions were not contrary to clearly established federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Accordingly, **IT IS HEREBY ORDERED** that Respondent's Motion to Dismiss (ECF #9) is **GRANTED**, and the Habeas Petition (ECF #1) is **DENIED**.

**VI**

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by

demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists would not disagree with the Court's resolution of the Habeas Petition, nor conclude that the issues deserve encouragement to proceed further because Williams' claims are moot, non-cognizable, or meritless. Accordingly, **IT IS HEREBY ORDERED** that a certificate of appealability is **DENIED**.

Although this Court has denied Petitioner a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* ("IFP") is lower than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002) (citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *See Foster* at 764-65; *see also* 28 U.S.C. § 1915(a)(3); Fed. Rule App. Proc. 24(a). Although jurists of reason could not debate this Court's resolution of Petitioner's claims, the issues Petitioner raises are not frivolous. Therefore,

Petitioner could appeal this Court's decision in good faith. The Court **GRANTS** Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 26, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 26, 2017, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764